

**SIGNED this 02nd day of November, 2009.**

_____
**CRAIG A. GARGOTTA
UNITED STATES BANKRUPTCY JUDGE**

_____

**UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 05-12968-CAG |
| CATHY MARIE SPENCE, | § | |
| Debtor. | § | CHAPTER 7 |
| | | |
| RONALD E. INGALLS, CHAPTER 7 | § | |
| TRUSTEE, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| GREGORY R. PHILLIPS, | § | ADVERSARY NO 08-1083-CAG |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER GRANTING
CHAPTER 7 TRUSTEE'S TURNOVER OF ATTORNEY FEES**

Before the Court is the Chapter 7 Trustee's ("Trustee") Complaint for turnover of funds that the Trustee asserts were improperly retained by Defendant Gregory R. Phillips in connection with his representation of Debtor Cathy Marie Spence. For the reasons stated below, the Court finds that Defendant shall turnover the fees of $4,000.00 that Debtor paid him within ten days of entry of this Memorandum Opinion and Order. The Court finds that it has subject jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334, and that this matter is a core proceeding as

1

defined under §157(a)(b)(2)(A) (matters concerning the administration of the estate). For the reasons stated herein, the Court finds that the Trustee should be awarded judgment in the amount of $4,000.00 against Defendant Phillips.

## BACKGROUND

This Complaint arises from a prior Order of this Court wherein the Court found that Defendant's employment agreement with Debtor was not in compliance with the Bankruptcy Code and Local Rules and disproved the employment agreement. After issuing its Order, the Debtor converted her case to Chapter 7. The Chapter 7 Trustee filed his Complaint on August 19, 2008, seeking turnover of the $4,000.00 in attorney's fees that Debtor had paid Defendant in connection with the disallowed fee arrangement to the Chapter 7 estate. Before addressing why the Defendant shall turnover the funds to the Trustee, the Court will give the procedural history of why it denied Defendant's employment agreement with Debtor.

## PROCEDURAL HISTORY AND FACTS

The Debtor, Cathy Marie Spence, filed a Chapter 13 petition on May 24, 2005. On January 18, 2006, Ameriquest Mortgage Company (Ameriquest), the loan servicer for the Debtor's Texas home equity note, filed a motion to lift the stay for unpaid post-petition mortgage payments. (Docket no. 27.)[1] An Order Conditioning Automatic Stay was entered on February 14, 2006, which provided in relevant part that the Debtor was to make payments outside the Chapter 13 Plan to cure the delinquent post-petition mortgage payments, and allow Ameriquest to pursue its state law remedies should the Debtor not comply with the terms of the Agreed Order. (Docket no. 33.) Debtor's Chapter 13 Amended Plan was then confirmed on June 27, 2006. (Docket no. 47.) On November 21, 2006, Ameriquest filed a Notice of Termination of Automatic Stay Due to Failure to Cure Default. (Docket no. 53.) Although the

---

[1] All docket references are to Debtor's Chapter 13 bankruptcy case, No. 05-12968.

2

Notice did not specifically state the basis for the default, it seems clear from the record at the hearing that the Debtor did not make payments in accordance with the terms of the Agreed Order Conditioning Automatic Stay.

Thereafter on May 16, 2007, the Debtor filed a motion to modify her Chapter 13 Plan because she had a change in her employment and was no longer making her mortgage payments to Ameriquest. (Docket no. 56.) In addition, the Debtor also provided in her amended Schedule B that she now had a potential claim against Ameriquest for violations of Article XVI, §50(a)(6) of the Texas Constitution, in that the lender had not complied with the requirements of the Texas Constitution for home equity loans. (Docket no. 61.) The purported amount of Debtor's claim against Ameriquest included the forfeiture of the original principal amount of the home equity loan, interest payments made on the home equity loan, and attorney's fees for filing suit to contest the validity of the home equity loan and lien. This claim was listed in the amount of $78,800.00, which is the amount the Debtor borrowed under the Texas home equity note.

In addition, Debtor's counsel filed a "Supplemental Statement Pursuant to 11 U.S.C. § 329(a), FRPB 2016(b)" wherein Debtor's counsel disclosed that the Debtor and counsel had entered into a contract in which the Debtor agreed to pay counsel the total sum of $4,000.00, with an initial amount of $1,000.00 having been paid (Docket no. 65.) The supplemental statement regarding the contract for legal services indicates that Debtor's counsel was to examine if there were potential violations by Ameriquest of the Texas Constitution regarding the refinancing of the Debtor's original note on her homestead, and to negotiate a settlement of Debtor's claim against the note holder prior to the filing of an adversary proceeding to contest the validity of the note and lien. Further, the $4,000.00 fee included the drafting and delivery of any statutory notices that were conditions precedent to the filing of a judicial proceeding. The

3

Debtor and her attorney refer to the work for which the Debtor will pay $4,000.00 as the "limited scope contract."

The proposed fee arrangement between Debtor and her counsel did not include the filing and prosecution of any judicial proceeding to contest Ameriquest's note and lien under the Texas Constitution for violations of Article XVI, § 50 of the Texas Constitution. As such, there would be a further fee arrangement between Debtor and her counsel covering any litigation against Ameriquest. Also, any unused portion of the $4,000.00 fee paid to counsel would be credited against fees incurred in a lawsuit filed against Ameriquest. The source of the payment of the $4,000.00 fee arrangement would be the monthly mortgage payments that Debtor would have made to Ameriquest but for the fact that the stay had been lifted and the note accelerated, and as such, the lender was purportedly not accepting any more mortgage payments from the Debtor.

As noted above, the $4,000.00 fee amount was not to cover the filing of a lawsuit against Ameriquest in which the loan secured by Debtor's exempt homestead was made the basis of relief, but was only for the limited basis of investigating the existence of claims and negotiating a possible settlement. This may or may not have occurred, but the adversary proceeding No. 07-1106 asserting such claims did get filed. Also, as noted above, the Debtor filed a stipulation of dismissal in this suit prior to answer by Ameriquest.

As a result of the forgoing, the Chapter 13 Trustee filed the motion to examine fees in which the Trustee argued that the fees Debtor's counsel may have received in connection with the representation of Debtor against Ameriquest may be excessive or inappropriate in light of the services performed and results obtained as outlined in *In re First Colonial Corp.*, 544 F.2d 1291 (5th Cir. 1997). In response, the Debtor's counsel acknowledged that the representation of Debtor in the context of challenging the validity of home equity practices in Texas is a new form

4

of litigation. Further, Debtor's counsel argued that contingent fee arrangements for home equity litigation are appropriate because it is a new area of litigation, particularly in bankruptcy court.

ANALYSIS AND DISCUSSION

Section 330(a)(4)(B) of the Bankruptcy Code provides for reasonable compensation to a debtor's attorney representing the interests of the debtor in connection with the bankruptcy case. As such, the court must determine the amount of the reasonable compensation and the benefit and the necessity of the services to the debtor as other factors set forth in §330. *See also* **Lamie v. United States Trustee**, 540 U.S. 526 (2004) (specifically finding that Chapter 13 debtor's attorneys are awarded fees under §330(a)(4)(B) rather than §330(a)(1)). In the context of a Chapter 13 case, the Austin Division has a Standing Order in place (dated March 1, 2007) that addresses most, but not all, fee arrangements in Chapter 13. The Standing Order Relating to Attorney Fees in Chapter 13 Cases in Austin provides for a fee arrangement in non-business cases that awards fees on a flat basis dependent upon the case being successfully confirmed on the first confirmation setting or thereafter. In addition, the Austin Standing Order provides for specific types of services that are to be included in this benchmark fee. Further, the Austin Standing Order does allow debtor's counsel to request additional fees for cause shown. The Standing Order does not contain any provision regarding the type of fee arrangement in this case. That said, the Standing Order does state that "an attorney in a Chapter 13 case may only request and obtain an award of fees for additional services beyond those specified ... [in the Standing Order] on motion, notice and hearing." Further, the Standing Order states that "such request may be by separate application *following the conclusion of the matter for which fees are requested*, . . ."

The stated basis of the fee arrangement in this case is on a contingency basis, yet the fees for the litigation are being paid to Debtor's counsel on a monthly basis prior to the litigation

5

being concluded. In essence, the proposed fee arrangement is a modified retainer that Debtor's counsel can directly draw upon for fees and expenses. The Court found that, generally, professional fees are awarded after the work is complete, and the Court and parties in interest have an opportunity to evaluate the results obtained. Inasmuch as Debtor's counsel failed to do this, the Court disallowed the fee arrangement.

The Chapter 7 Trustee filed his Complaint against Defendant seeking a turnover of the attorney fees that Debtor had paid Defendant in connection with the home equity representation. The Chapter 7 Trustee contends that the Court's Order granting the Chapter 13 Trustee's motion to examine fees, which stated in part that "the fees being paid to debtor's counsel in lieu of mortgage payments were clearly property of the estate," requires the Defendant to turnover attorney fees to the Chapter 7 estate because they were property of the Chapter 13 estate. Further, the Chapter 7 Trustee argues that because the Chapter 13 Trustee's motion to examine fees was granted, and that the limited scope contract was disallowed, there is no independent basis for the Defendant to keep his attorney fees.

The Defendant denies the Chapter 7 Trustee's assertions, arguing that his attorney's fees are not property of the bankruptcy estate under 11 U.S.C. § 348(f)(1)(A) because property of the estate when a case is converted is defined to be all property as of the date of petition that is under the control or possession of the debtor on the date of conversion. The Defendant argues that because the attorney fees were not in possession or control of the Debtor upon conversion of her case to Chapter 7, the attorney's fees are not property of the estate. Further, the Defendant states that the Chapter 7 Trustee cannot recover the payment of any attorney's fees payable to him because there was no transfer of any estate property to him. The Defendant also alleges that because the Court's Order was silent as to the prospective disposition of the attorney's fees after

6

denial of the employment contract with Debtor, that the Chapter 7 Trustee is precluded from arguing that the fees are property of the estate. Also, the Defendant argues that the Trustee's Complaint is barred by limitations under 11 U.S.C. §§ 549(d) and 550(f).

The operative facts in this proceeding are not in dispute. The parties submitted a stipulation of facts that covers all of the litigative events in this matter. The only real issues in this matter are whether the Defendant's attorney's fees are property of the estate subject to turnover and whether the Chapter 7 Trustee can require the Defendant to turn over the funds under the Court's prior Order. The Court finds that the attorney's fees are property of the estate and that the Defendant must turn over the funds to the Chapter 7 estate.

As an initial matter, the Chapter 7 Trustee correctly argues that Phillips, in his capacity as attorney for Debtor Spence, never obtained approval to pursue the home equity lawsuit from the Court or the Chapter 13 Trustee. *See* 11 U.S.C. § 327. Further, as this Court noted in its Order granting the Chapter 13 Trustee's motion to examine fees, that fee awards generally occur after the work is concluded, not prior to the work being conducted. Some courts have found that, absent court authorization under section 327, an attorney cannot receive compensation. *See **In re Crafts Retail Holding Corp.***, 378 B.R. 44, 49 (Bankr. E.D.N.Y. 2007) (policy considerations dictate that there should be prior court approval of employment of attorneys before an award of fees). As such, absent compliance with the Bankruptcy Code and Rules, there is no absolute right to compensation. ***In re Moore***, 312 B.R. 902, 999 (Bankr. N.D. Ala. 2004).

Phillips attempts to counter established practices regarding fee awards by asserting that the funds in question were not property of the estate. Phillips reasons that because the moneys paid to him were not property of the estate, they are not subject to the Chapter 7 Trustee recovering same. Phillips further contends that because the fees paid to him were not property of

7

the estate the fee arrangement is not subject to review under section 329. Phillips posits that the Fifth Circuit's decision in *In re Hargis*, 887 F.2d 77, 79 (5th Cir. 1989) supports his contention that the fee award is not property of the estate. *Hargis* dealt with the determination of whether life insurance proceeds that were obtained more than 180 days after petition date, and paid to Chapter 11 counsel, could be disgorged. The facts nor the statutory basis for the *Hargis* decision is applicable to this matter.

      This Court found that the fees that were paid to Phillips were property of the estate as a matter of law because Phillips (and the Debtor) both acknowledged that the Debtor diverted funds that would have been used to pay her mortgage during her Chapter 13 case to Phillips for the purpose of investigating and initiating pre-filing actions against the Debtor's mortgage lender. Those funds are clearly property of the estate under 11 U.S.C. § 1306(a)(2). Phillips asserts that because the Debtor's case was converted to Chapter 7 the day after the Court issued its corrected Order granting the Chapter 13 Trustee's motion to examine fees, the fees are not subject to recovery. The Defendant cites section 348(f)(1) as support for his argument that the fees paid to him are not property of the estate. Section 348(f)(1) provides that when a Chapter 13 case is converted to another case that property of the estate is defined as property that is in the possession or control of the debtor on the date of conversion. The Defendant argues that because the Debtor no longer had possession or control of the $4,000.00 when the case was converted (the money having been given to Phillips and spent), the Chapter 7 Trustee cannot recover the funds.

      The Defendant's reasoning is flawed. To begin with, it is not the attorney, but the Court, that determines the propriety of fee arrangements and fee awards in bankruptcy. The Defendant usurped this Court's authority to review his fee arrangement with the Debtor by first entering

8

into the contract without Court approval and next spending the fees without Court approval. Undeterred, the Defendant then claims that because the money was given to him before the case was converted to Chapter 7, it cannot be property of the estate because the Debtor no longer possesses or controls the money. That is incorrect. The Court found prior to the conversion to Chapter 7 that the attorney fees were property of the estate. The Defendant cannot eviscerate the Court's ruling by simply converting the case to Chapter 7 and spending the money. The Court finds that once it determined that the attorney's fees were property of the Chapter 13 estate, the Defendant could not unilaterally change the characterization of the property.

11 U.S.C. Section 542(a), "Turnover of property to the estate," provides that, " . . . an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title . . . shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate." The only exception to this provision is that the property be of inconsequential value or benefit to the estate, clearly not an exception in this case.

Courts have held that "[t]he duty to turn over [or deliver] the property is not contingent upon any predicate violation of the stay, any order of the bankruptcy court, or any demand by the creditor." *In re Calvin*, 329 B.R. 589 (Bankr. S.D. Tex 2005) quoting *In re Knaus,* 889 F.2d 773, 775 (8th Cir. 1989); *In re U.S.A. Diversified Products, Inc.*, 193 B.R. at 872. In fact, "[t]here is no requirement in the Code that the trustee make a demand, obtain a court order, or take any further action in order to obtain a turnover [delivery] of the estate's property." *Id*. (citations omitted); *In re Bidlofsky*, 57 B.R. 883, 900 (Bankr. E.D. Mich. 1985). The obligation "is self-operative and mandatory." *In re U.S.A. Diversified Products, Inc.*, 193 B.R. at 872 (quoting *In re Larimer,* 27 B.R. 514, 516 (Bankr. D. Idaho 1983)).

At the time that this court found the funds to be property of the bankruptcy estate, if not sooner, Phillips' obligation was to turn over the funds to the Trustee for the benefit of creditors.

Diverting estate property can only occur in accordance with applicable bankruptcy law. Section 549 of the Code provides the trustee may avoid a transfer of property of the estate:

(1)  that occurs after the commencement of the case; and (11 U.S.C. 549(a)(1))

(2)  that is not authorized under this title or by the court (11 U.S.C. 549(a)(2)(B)).

When property of the estate was transferred to Phillips, such transfer constituted an unauthorized post-petition transfer of estate property, avoidable under section 549. ***Barron v. Countryman***, 432 F.3d 590, 597 (5th Cir. 2005).

Phillips alleges that this action is time-barred; however, section 549(d) provides a two year limitation for commencement of an action under this section, accruing on the date of the transfer sought to be avoided. The transfers occurred in 2007. This Complaint is timely because the Chapter 7 Trustee filed his complaint in 2008, within the two year period of avoiding the transaction.

Section 105 of the Bankruptcy Code provides that:

[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

The bankruptcy court has equitable power under this Section, as well as its inherent authority, to correct abuses of the bankruptcy system. The court has power to enforce its orders. An attorney should not be able to circumvent a ruling and order of the bankruptcy court by converting a case to another chapter under the Bankruptcy Code. The Court's ruling in this case

was clear. Phillips' refusal to comply with the ruling of the court should be remedied. The funds should be returned to the estate for the benefit of creditors.

Section 105(a) provides bankruptcy courts broad authority to "take any action that is necessary or appropriate 'to prevent an abuse of process.'" *Marrama v. Citizens Bank of Massachusetts*, __ U.S. __, 127 S.Ct. 1105, 1112 (2007). Courts have held that § 105 is broad enough to empower bankruptcy courts to sanction attorneys in conjunction with their inherent power "to implement the Bankruptcy Code and prevent abuses of bankruptcy process, powers inherent to district courts, as the Supreme Court recognized in *Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991)." *In re Cochener*, 382 B.R. 311 (S.D. Tex 2007) *citing In re Osborne*, 375 B.R. 216, 226 (Bankr. M.D. La. 2007). *In re Rainbow Magazine, Inc.*, 77 F.3d 278, 284 (9th Cir. 1996) ("By providing that bankruptcy courts could issue orders necessary 'to prevent an abuse of process,' Congress impliedly recognized that bankruptcy courts have the inherent power to sanction that *Chambers* recognized exists within Article III courts.") and *In re Courtesy Inns, Ltd., Inc.*, 40 F.3d 1084, 1089 (10th Cir. 1994) ("We believe, and hold, that § 105 intended to imbue the bankruptcy courts with the inherent power recognized by the Supreme Court in *Chambers*.").

The provisions of the Bankruptcy Code and the Bankruptcy Rules that regulate attorney fees are designed to protect both creditors and the debtor against overreaching attorneys. *In re Kisseberth,* 273 F.3d 714 (6th Cir. 2001) *citing In re Walters*, 868 F.2d 665, 668 (4th Cir. 1989). To ensure such protection, bankruptcy courts have broad and inherent authority to deny any and all compensation where an attorney fails to satisfy the requirements of the Code and Rules. *In re Downs*, 103 F.3d 472, 479 (6th Cir. 1996); *Matter of Prudhomme*, 43 F.3d 1000, 1003 (5th Cir. 1995).

No matter how this case is dissected, Phillips has no legal authority for his retention of the funds paid to him by the Debtor during the Chapter 13 part of this case. When this Court's Order of December 12, 2007, held that the "minimum requirement" was the return of the funds to the trustee, the Defendant is not free to act like this Court did not impose this requirement on him. As such, the Court finds that Phillips shall pay to the Chapter 7 Trustee the sum of $4,000.00 within ten (10) days of entry of this Memorandum Opinion and Order.